```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE SANOFI SECURITIES LITIGATION
                                                                    14-cv-9624 (PKC)

                                                                    MEMORANDUM
                                                                    AND ORDER

-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

In a Memorandum and Order dated January 6, 2016, the Court dismissed plaintiffs' putative class action against Sanofi and its former Chief Executive Officer Christopher Viehbacher for failure to state a claim.  In re Sanofi Sec. Litig., 14 cv 9624 (PKC), 2016 WL 93866 (S.D.N.Y. Jan. 6, 2016).  Plaintiffs now move to alter or amend the judgment pursuant to Rule 59(e), Fed. R. Civ. P., for relief from judgment pursuant to Rule 60(b), Fed. R. Civ. P., and, for leave to file a Second Consolidated Amended Complaint ("SCAC") pursuant to Rule 15, Fed. R. Civ. P.  Plaintiffs' argument centers on an affidavit filed by Diane Ponte, a former paralegal at Sanofi, in an action in New Jersey state court (the "Ponte Affidavit").  According to plaintiffs, the "newly discovered evidence" contained in the Ponte Affidavit supports allowing them to further amend their Consolidated Amended Complaint to state a claim for securities fraud.  After reviewing the Ponte Affidavit as well as the proposed SCAC, the Court concludes that plaintiffs have not met the standard required to vacate judgment and re-open this case because the proposed SCAC would be subject to immediate dismissal for failure to state a claim for relief.

DISCUSSION.

    A.  Legal Standard:

A district court may amend it judgment pursuant to Rule 59(e), Fed. R. Civ. P.  It may also grant relief from final judgment pursuant to Rule 60(b), Fed. R. Civ. P., if certain

grounds are shown.  For example, if there was "mistake, inadvertence, surprise, or excusable neglect" or there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  Rule 60(b).  Motions for reconsideration and/or relief from judgment are generally not favored and are granted only under exceptional circumstances.  United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001) ("A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."); Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

"Whether relief is sought under Rule 59(e) or Rule 60(b)(2), courts apply the same strict standard for determining what qualifies as 'newly discovered evidence.'"  Becnel v. Deutsche Bank AG, 838 F. Supp. 2d 168, 171 (S.D.N.Y. 2011).  The moving party must demonstrate that:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

Int'l Bhd. of Teamsters, 247 F.3d at 392 (quoting United States v. IBT, 179 F.R.D. 444, 447 (S.D.N.Y. 1998).

Pursuant to Rule 15, Fed. R. Civ. P., the Court may grant a party leave to amend a complaint and should do so "freely . . . when justice so requires."  Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008).  "Leave to amend, though liberally granted, may properly be

denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Id. (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)).  An amendment is futile if the "proposed amended complaint would be subject to immediate dismissal." Jones v. New York State Div. of Military & Naval Affairs, 166 F.3d 45, 55 (2d Cir. 1999).

Generally, "[a] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." Ruotolo, 514 F.3d at 191.  However, "it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." Id. (quoting Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf, 930 F.2d 240, 245 (2d Cir. 1991)).

B.  Application:

Plaintiffs assert that the Ponte Affidavit constitutes a reasonable ground for vacating the Court's prior judgment because it is a "surprise" and/or "newly-discovered evidence" that would alter the Court's Order of Dismissal.  Defendants dispute that assertion.  They argue that the information contained in the Ponte Affidavit was neither a "surprise" nor "newly discovered evidence" because plaintiffs had been in contact with Ponte prior to filing their Consolidated Amended Complaint and because the subject-matter, if not the Affidavit itself, was available to plaintiffs months before the Court's January 6 Memorandum and Order.  They also argue that, regardless of the evidentiary status of the Ponte Affidavit, the information it contains fails to cure any of the deficiencies in plaintiffs' first Consolidated Amended Complaint.

Plaintiffs filed their Consolidated Amended Complaint on May 19, 2015. (Dkt. 22). At that time, plaintiffs were well aware of Ponte and the content of her state court allegations. For example, Ponte's allegations formed the basis of plaintiffs' Consolidated Amended Complaint and plaintiffs' stated, in footnote one on page 13 of the Complaint, that "Ms. Ponte has personally verified to the undersigned lawyers in this action the accuracy of her complaint allegations." On August 17, 2015, defendants moved to dismiss the Consolidated Amended Complaint. (Dkt. 29). And, on October 9, 2015, plaintiffs responded in opposition. (Dkt. 34). A week later, on October 15, 2015, Ponte filed her Affidavit in state court, at which time plaintiffs became aware of its existence. (Declaration of Joshua B. Silverman from Feb. 29, 2016 ("Silverman Decl.") ¶ 4).

Plaintiffs did not, however, raise the issue of the Ponte Affidavit with the Court until February 4, 2016, almost four months after its discovery and almost a month after the Court's Order of Dismissal. (Dkt. 40). To explain that nearly four-month silence, plaintiffs contend that "the status" of the Ponte Affidavit was not clear to them until shortly before they filed their present motions. (Silverman Decl. ¶¶ 6-7). For example, they assert that around the time the Ponte Affidavit was filed Sanofi had filed motions in state court demanding the return of the documents underlying the Affidavit because of their allegedly "privileged nature." (Silverman Decl. ¶ 4). On November 13, 2015, however, the New Jersey court dismissed Sanofi's motions without prejudice. (Silverman Decl., Ex. 2). Despite that dismissal order, plaintiffs maintain that "the status" of the affidavit remained unclear to them until January 28, 2016, because only then did they become aware that no further motions or orders addressing the Ponte Affidavit had been filed. (Silverman Decl. ¶¶ 6-7).

- 4 -

Plaintiffs' explanation for why they waited four months to raise the Ponte Affidavit with the Court is wanting. Bearing in mind that the standards governing motions under Rules 59 and 60 are strict, it is difficult to conclude that plaintiffs were surprised by or justifiably ignorant of the information contained in the Ponte Affidavit on the facts adduced. See Int'l Bhd. of Teamsters, 247 F.3d at 391; Shrader, 70 F.3d at 257. Nevertheless, the Court need not decide the motion on those grounds because, even assuming *arguendo* that the Ponte Affidavit constituted a "surprise" or "newly discovered evidence," the proposed SCAC constructed out of the information contained in the Ponte Affidavit fails to cure any of the deficiencies present in the first Consolidated Amended Complaint.

The Court dismissed plaintiffs' first Consolidated Amended Complaint on four independent grounds. First, plaintiffs failed to allege with particularity the illegal marketing and kickback scheme that was the basis for Sanofi's alleged violation of the securities laws. In re Sanofi Sec. Litig., 2016 WL 93866, at *7-8. Second, plaintiffs failed to allege any actionable misstatements or omissions. Id. at *8-11. Third, plaintiffs failed to adequately allege scienter. Id. at *11-14. And fourth, plaintiffs failed to plausibly allege a causal link between Sanofi's alleged material omissions and the decline in Sanofi's stock price. Id. at *14-16. For the proposed SCAC to warrant vacating the Court's prior judgment, it would have to cure each of those four grounds for dismissal. It cures none.

Plaintiffs' primary argument is that the proposed SCAC addresses the deficiencies raised by the Court in its first grounds for dismissal: the failure to allege with particularity Sanofi's "improper kickback scheme." It does address some. For example, the proposed SCAC clarifies that seven of the nine allegedly improper contracts were with Accenture and two of the nine were with Deloitte. (SCAC ¶ 49). It asserts that those allegedly improper consulting

contracts referenced providing "injection training services" to retail pharmacies in exchange for favorable formulary placement for Sanofi's diabetes drugs and charged Sanofi amounts that appeared grossly disproportional to those services. (SCAC ¶¶ 50-51). It alleges that Ponte met with a representative from Accenture in January 2013 who told her that Accenture wanted to enter into subcontracts with pharmacies to induce customers to switch to Sanofi's products. (SCAC ¶ 52). And, it alleges that Edward Berg, an Associate General Counsel and Vice President at Sanofi, reviewed one of those nine contracts and said in an email to Ponte that it "created legal risk (kickback)" and "violated almost every principle of financial stewardship." (SCAC ¶ 60).

It does not, however, cure all of the specific pleading problems raised by the Court in its first grounds for dismissal. For example, none of the amended allegations identify the findings of the alleged internal investigation that, according to Ponte, confirmed that the nine contracts in question were unlawful. Nor do the amended allegations establish a more-than-speculative connection between the allegedly improper consulting contracts and any third-party pharmacies. In other words, the proposed SCAC still does not plausibly allege that the supposed kickback schemed actually materialized. In fact, the new allegations regarding Berg cut against inferring that it did: Berg's "reading of the contract . . . is that the injection services for formulary placement is illustrative of the types of ideas that might be generated, rather than a direction to undertake a specific program." (SCAC ¶ 60). Because the proposed SCAC cures only some of the specific pleading problems mentioned in the Court's January 6 Memorandum and Order, it would still be subject to immediate dismissal for failing to allege with particularity Sanofi's "improper kickback scheme."

Nevertheless, even if plaintiffs' proposed SCAC resolves the Court's first grounds for dismissal, it does not cure any of the three remaining grounds for dismissal: the lack of actionable misstatements and omissions, the failure to plausibly allege a strong inference of scienter, and the failure to plausibly allege loss causation. In fact, plaintiffs do not argue that the SCAC cures each of those independently dispositive issues. They argue that the amendment plausibly alleges corporate scienter, but they completely ignore the remaining lack of actionable misstatements or omissions and loss causation.

Regarding scienter, plaintiffs claim that Berg's email to Ponte plausibly establishes corporate scienter because Berg is a management-level employee and his email reveals that one of Sanofi's consulting contracts raised "kickback" concerns. However, Berg's email to Ponte does not create a strong inference of corporate scienter. See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). His statement that the injection services program was "illustrative of the types of ideas that might be generated" and was not "a direction to undertake a specific program," undercuts the conclusion that he believed Sanofi was engaging in an unlawful kickback scheme with third-party pharmacies. (SCAC ¶ 60). The more compelling non-fraudulent inference generated from Berg's email is that he believed a consulting firm seeking a contract with Sanofi pitched an idea that "had no consideration for the clear legal issues" involved. (Silverman Decl., Ex. 1 ¶ 24). Because the SCAC does not plausibly allege that the injections services program was more than a consulting firm's ill-conceived proposal, Berg's knowledge of the contract does not, on its own, create a strong inference of corporate scienter.

But again, even if the SCAC did plausibly establish corporate scienter, its failure to cure the lack of actionable misstatements or omissions and loss causation condemns it to immediate dismissal. The SCAC does not add any new misstatements or omissions or allege any facts making the misstatements and omissions already included in the first Consolidated Amended Complaint actionable. Sanofi's statements about regulatory compliance and corporate integrity and its SEC filings, press releases, and conferences calls are still not actionable as a matter of law for the reasons stated in the Court's January 6 Memorandum and Order. And, Viehbacher's Sarbanes-Oxley certifications remain not actionable because plaintiffs still fail to plausibly allege any facts pertaining to Sanofi's internal financial reporting or any facts establishing Viehbacher's knowledge of fraudulent activity.

Nor does the proposed SCAC plausibly allege loss causation. Plaintiffs still fail to plausibly allege that Sanofi's "improper kickback scheme" materially inflated the sales of its diabetes products. Thus, there is no basis from which to assess the impact of ending that "improper kickback scheme" had on the market for Sanofi's diabetes products or the price of its stock.

In sum, the proposed SCAC, incorporating the information from the Ponte Affidavit, fails to cure any of the four grounds for dismissal discussed in the Court's January 6 Memorandum and Order. It represents a futile amendment under Rule 15 and fails to warrant vacating the Court's prior judgment under Rules 59 and 60.

CONCLUSION.

Plaintiffs' motion for reconsideration, relief from judgment, and leave to file an amended complaint is DENIED. (Dkt. 40).

SO ORDERED.

                                                 P. Kevin Castel
                                        United States District Judge

Dated: New York, New York
         June 24, 2016